**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JENA BEYES, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:22-CV-614 SRW |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant(s). | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF No. 12. Defendant filed a Brief in Support of the Answer. ECF No. 13. Plaintiff filed a Reply. ECF No. 14. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

**I.      Factual and Procedural Background**

In March of 2020, Plaintiff Jena Beyes protectively filed applications for disability insurance benefits ("DIB") under Title II, 42 U.S.C. §§ 401, *et seq.*, and supplemental security income (SSI) under Title XVI, 42 U.S.C. §§ 1381, *et seq.* Tr. 14, 808-09. Plaintiff's applications were denied on initial consideration and reconsideration. Tr. 620-70, 730-49. On January 4, 2021, she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 750-51.

1

Plaintiff appeared for a telephonic hearing, with the assistance of counsel, on April 6, 2021. Tr. 595-619. Plaintiff testified concerning her disability, daily activities, functional limitations, and past work. *Id*. The ALJ also received testimony from vocational expert ("VE") John Stephen Dolan, M.A., C.R.C. *Id*. at 615-18. On June 17, 2021, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 14-32. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 805-07. On April 6, 2022, the Appeals Council denied Plaintiff's request for review. Tr. 1-7. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II.    Legal Standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the

2

claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe impairment "which significantly limits claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).

Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th

4

Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

### III.   The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through September 30, 2021. Tr. 16. Plaintiff has not engaged in substantial gainful activity since the alleged onset date of February 4, 2020. *Id*. Plaintiff has the severe impairments of "degenerative joint disease with osteonecrosis of the bilateral knees, pes planus of the feet and posterior tibial tendon dysfunction, degenerative disc disease, asthma, obesity, migraines, fibromyalgia, a mood disorder (diagnosed as schizoaffective disorder, bipolar disorder, and a depressive disorder), and an anxiety/panic disorder." Tr. 17. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 17-20. The ALJ found Plaintiff had the following RFC through the date last insured:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: she can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, stoop, and crouch. She can frequently balance. She can ever kneel or crawl. She cannot tolerate concentrated exposure to vibration, extreme heat, extreme cold, and respiratory irritants such as dust, fumes, odors, gases, and poor ventilation. She should have no exposure to unprotected heights, hazardous machinery, open flames, or open bodies of water. She is able to learn, remember, and carry out simple, routine tasks. She is able to use reason and judgment to make simple, routine work-related decisions. She is able to work at an appropriate and consistent pace while performing simple, routine tasks. She is able to complete simple, routine tasks in a timely manner. She is able to ignore or avoid distractions while performing simple, routine tasks. She

must have only gradual changes in job setting and duties. She is able to sustain an ordinary routine and regular attendance at work while performing simple, routine tasks, and is able to work a full work day without needing more than the allotted number or length of rest periods during the day while performing simple, routine tasks. She can have no contact with the general public. She is able to occasionally work close to or with coworkers and supervisors without interrupting or distracting them while performing simple, routine tasks.

Tr. 20-21. The ALJ found Plaintiff is unable to perform any past relevant work as an assistant manager or a certified medical technician. Tr. 31. The ALJ further found Plaintiff was born on March 19, 1985 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. *Id.* Plaintiff has "a limited education." *Id.*

The ALJ determined the transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferrable job skills. *Id.* Relying on the testimony of the VE and considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs existing in significant numbers in the national economy which the Plaintiff could perform, including representative occupations such as assembler (*Dictionary of Occupational Titles* ("*DOT*") No. 713.687-018, with approximately 100,000 positions nationally), product checker (*DOT* No. 726.684-110, with approximately 5,000 positions nationally), and escort vehicle driver (*DOT* No. 919.663-022, with approximately 5,000 positions nationally). Tr. 31-32 The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, from February 4, 2020 through the date of her decision, issued on June 17, 2021. *Id.*

## IV.    Discussion

Plaintiff argues her RFC was not properly formulated because the ALJ: (1) did not explain how her self-reported limitations caused by migraines were inconsistent with the record; (2) failed to address the consistency factor when evaluating the persuasiveness of Dr. Keya Bhatt

6

Kuhn's medical opinion; and (3) failed to include the limitations opined by Dr. Steven Akeson and Dr. Charles Watson, both of whom indicated Plaintiff could only respond to minimal changes in a work setting.

### A. The ALJ's Evaluation of Plaintiff's Migraine Headaches

At Step Two, the ALJ determined Plaintiff's migraine headaches to be a severe impairment. Tr. 17. Plaintiff argues, however, that the ALJ did not properly consider her testimony describing the severity of her migraines. Plaintiff asserts the ALJ failed to identify inconsistencies between her testimony and the record, and did not explain why the RFC did not include any headache-related limitations such as a need for limited exposure to light or noise.

In formulating the RFC, the ALJ considered Plaintiff's April 6, 2021 hearing testimony related to migraines. The ALJ wrote:

> She said she had migraines which were not improved. She reported nerve blocks every six weeks to try to control them. She said she had migraines three times a week and a nagging headache daily. She said the severity of the headaches had initially improved with the nerve blocks but they no longer had any affect. She said she sat in dark rooms with ear plugs with migraines.

Tr. 22 (referencing Tr. 607-08).

The ALJ found the "medical evidence [did] not support unimproved migraines occurring at the frequency and severity alleged" by Plaintiff because the "evidence show[ed] that she reported consistent improvement and control of migraines and headaches with treatment." Tr. 23. In making this determination, the ALJ referred to specific medical evidence in the record as follows:

> The claimant was treated for migraines. In March 2020, she was seen in emergency care for reported syncopal episode. She was asymptomatic at the examination. She had no cranial nerve deficits or sensory deficits. She had normal coordination and reflexes. Finger to nose testing was normal. An electrocardiogram was normal. She declined admission for observation. She was not discharged for outpatient follow up. She later stated that she had not taken her

prescribed clonazepam for a week and felt the incident was related. Two days later, she was seen by her neurologist. The claimant had previously received occipital nerve blocks for migraines. She reported that she no longer had daily headaches. She had not kept a headache journal as recommended because her headaches improved. She was told to decrease her use of Percocet, which could cause rebound headaches. She said she was down to two a day and was trying to wean off the medication. She had a normal neurological examination. She had normal language, movements, and coordination. She had normal gait and balance. Repeat occipital nerve blocks were completed. She returned two months later. She said she had only one severe headache since the last visit and occipital blocks. She reported improved fatigue and no additional episodes of syncope. The examination remained unremarkable. Examinations in July and September were unchanged. In July, she again reported only one severe headache since the last visit. She continued to receive occipital blocks. At the September consultative examination, she said migraines occurred two to three times a week and lasted for a day. She had no neurological abnormalities or cognitive defects. However, that month she reported zero to two severe headaches and four mild to moderate headaches a month. She said she was not debilitated by them for more than one day. Treatment records indicated headaches were well-controlled and continued to recommend occipital nerve blocks every two months. A November examination reported increased headaches but her examination and recommendations were stable.

Tr. 26 (citing Tr. 3900-09, 3911-16, 4498-4504, 4525, 4533, 4564, 4572, 4596, 4624, 4633, 4655, 4662).

Additionally, the ALJ considered Plaintiff's ability to do certain tasks. For instance, the ALJ noted Plaintiff "was able to work part-time, care for her elderly parents, care for her dogs and horses, and perform activities of daily living including personal care and cooking." Tr. 30. *See* Tr. 3692 (noting plaintiff was working at a dog kennel on or around February 24, 2020, which required "bending all day long"), Tr. 3719 (activities of daily living are "manageable"), Tr. 4501 (on January 31, 2021 plaintiff reported "not need[ing] help at home" and having the ability to cook, shop, shower, dress herself daily, watch TV, listen to the radio, and train horses as a hobby), Tr. 5409 (plaintiff reported she was still working at a dog kennel on or around January 8, 2021)).

8

An ALJ may not discount subjective complaints solely because they are unsupported by objective medical evidence. *Halverson v. Astrue*, 600 F.3d 922, 931-32 (8th Cir. 2010) (citing *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008)). However, the ALJ may discount complaints if they are inconsistent with the evidence as a whole. *Chaney v. Colvin*, 812 F.3d 672, 677-78 (8th Cir. 2016). When analyzing a claimant's credibility, the ALJ considers various factors. *See* 20 C.F.R. § 404.1529; *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) (explaining the factors are (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) any functional restrictions); *see also Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) ("[L]ack of objective medical evidence is a factor an ALJ may consider."). The Court defers to the ALJ's credibility determination if it is supported by good reasons and substantial evidence. *Bryant v. Colvin*, 861 F.3d 779, 782-83 (8th Cir. 2017).

The Court finds the reasons offered by the ALJ in support of her analysis of Plaintiff's subjective complaints regarding migraine headaches are based on substantial evidence in the record as a whole. The ALJ provided various reasons for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of her headache symptoms were not entirely consistent with the medical and non-medical evidence in the record.

Plaintiff's alleged onset date is February 4, 2020. However, on February 7, 2020, February 18, 2020, and March 7, 2020 she denied headaches during a physician's review of her systems. Tr. 3911, 3924, 3932-33. On March 9, 2020, Plaintiff reported to her neurologist that she no longer experienced daily headaches and her headache symptoms were "better controlled since she had occipital nerve blocks." Tr. 3901, 3909. On July 20, 2020 and July 22, 2020, Plaintiff continued to report she was no longer experiencing daily headaches and, in fact, only

experienced one headache since May 13, 2020. Tr. 4617, 4619, 4624, 4655. In August of 2020, plaintiff continued to report she was still working at a dog kennel. Tr. 4603.

On August 28, 2020, Plaintiff reported to a non-treating consultative examiner, Dr. Alan J. Politte, that her headaches were severe, she did not know what triggered them, and "when she has a migraine headache she has to go into a dark room, turn off all the lights, and it has to be very quiet." Tr. 4491. Inconsistently, on September 14, 2020, treatment notes indicated she was still responsive to occipital nerve blocks and declined a refill for her headache medication. Tr. 4596. Plaintiff told her treating physician on September 23, 2020 that her headaches were "related to allergies and sinus congestion" and "relieved with Flonase." Tr. 4564. Her headache symptoms were described in these treatment notes as "well controlled." Tr. 4572. Notably, the only mention in the 5,440-page record of Plaintiff's need to wear ear plugs or retreat to a dark room when experiencing headaches was in her own self-report to Dr. Politte and in her hearing testimony. Nowhere in the record does she inform a treating provider of these limitations.

In addition, while Plaintiff testified that she cannot tolerate over-the-counter Aleve, Tr. 606, she told her treating provider on November 17, 2020 she specifically took Aleve for a headache, Tr. 4536. Other treatment notes reflect that despite being told not to take Ibuprofen or to not take Ibuprofen regularly; she did continue to take Aleve. Tr. 3917, 4668. On November 23, 2020, Plaintiff reported to her treating physician that she experienced 12 headaches over the past month, 3 of which she described as severe, and "0 to 1" as debilitating. Tr. 4525. These notes defined her "headache triggers" as: "Allergies, Unknown mostly. Possibly from bending over too much at work. Inadequate sleep." *Id.* Despite the frequency of headaches alleged, it was indicated her "[h]eadaches [were] well controlled with the current regimen." Tr. 4533. Subsequent treatment notes addressing headache-related symptoms were mostly absent from the

10

record until January 19, 2021, at which point she was described to be "negative for headaches." Tr. 5424.

The Court finds the ALJ provided multiple reasons for determining Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were inconsistent with the evidence in the record as a whole. The ALJ did not dispute that Plaintiff experienced symptoms but found those symptoms to not be as limiting as Plaintiff claimed based on objective medical evidence, including clinical findings during examinations, aggravating factors, medication effectiveness, and daily activities and abilities to care for herself. The ALJ properly discounted Plaintiff's subjective complaints by pointing to legitimate inconsistencies. *Chaney*, 812 F.3d at 677-78 (allowing the ALJ to discount complaints inconsistent with the evidence as a whole).

As to the exclusion of any headache-related limitations in the RFC, such as a need for limited exposure to light or noise, the Court finds no error. Plaintiff does not cite to any medical records in which a physician indicated a requirement for such environmental limitations. Nor do any appear in the record. To the contrary, on October 9, 2020 and December 21, 2020, consultative examiners, Dr. Donald Charles Nelson and Dr. Nancy Ceaser, respectively, indicated Plaintiff could experience unlimited exposure to noise. Tr. 626, 634, 646, 656. Although Plaintiff testified to retreating into a dark room when experiencing headaches, her treating provider's records do not reflect that any such limitations were discussed or recommended. "The ultimate burden of persuasion to prove disability . . . remains with the claimant." *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004) (finding whether there is a need to lie down is a medical question requiring medical evidence; record did not contain any evidence that medical condition

required claimant to lie down for hours each day). Thus, Plaintiff's argument that the ALJ improperly excluded limitations as to her headaches is not well-taken because there is no evidence in the record to support such a requirement.

### B. The ALJ's Evaluation of Dr. Keya Bhatt Kuhn's Medical Opinion

Plaintiff contends the ALJ erred in finding Dr. Kuhn's medical opinion to be unpersuasive because she did not address the consistency factor as required by the rules of the Social Security Administration. ECF No. 12 at 7. In the alternative, Plaintiff asserts that "even if the ALJ's rationale could be construed to comply with the requirements of the regulations, remand is still required because her stated reasons for finding the opinion unpersuasive are not supported by substantial evidence." *Id.* at 8.

Claims filed after March 27, 2017, like Plaintiff's, requires the ALJ to evaluate medical opinions pursuant to 20 C.F.R. § 404.1520c. This provision states the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, an ALJ is to evaluate the persuasiveness of any opinion or prior administrative medical finding by considering the: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c(c).

The rules make clear that supportability and consistency are the "most important factors;" therefore, an ALJ must explain how she considered these factors in the decision. 20 C.F.R. §

404.1520c(b)(2). An ALJ may, but is not required to, explain how she considered the remaining factors. *Id. See Brian O v. Comm'r of Soc. Sec.*, 2020 WL 3077009, at *4 (N.D.N.Y. June 10, 2020) (quoting 20 C.F.R. § 404.1520c(a), (b)) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'" (alterations omitted)).

Dr. Kuhn completed a three-page Medical Source Statement ("MSS") on March 15, 2021. Tr. 5400-02. Within the MSS, Dr. Kuhn identified Plaintiff's diagnoses as schizoaffective disorder, bipolar type; agoraphobia; congenital valgus; deformities of bilateral knees; and fibromyalgia. Tr. 5400. She described Plaintiff's symptoms as "pain in knees, severe depression, [and] pain all over body." *Id.* Dr. Kuhn indicated Plaintiff experienced full body flare ups "every time it rains, frequency of 2-3x/mo for 4-5 days." *Id.* As to medication side effects, Dr. Kuhn indicated "Clonazepam causes drowsiness," but "other medications are well tolerated." *Id.*

The remainder of the MSS form is in a checklist format. Dr. Kuhn checked the boxes that Plaintiff can constantly lift or carry 0 to 10 pounds; never lift or carry 20 to 50 pounds; and never twist, stoop, balance, crouch, crawl. Tr. 1501. In the section titled "use of hands/arms," Dr. Kuhn checked the "No" box for whether Plaintiff has limitations reaching, handling or fingering. *Id.* Contradictorily, however, Dr. Kuhn then indicated Plaintiff can never reach, handle, finger, or feel. *Id.* Dr. Kuhn opined Plaintiff can sit for up to 30 minutes without needing to change positions and stand for one hour before needing to sit down or walk around. *Id.* In an 8-hour working day, she estimated Plaintiff could sit for a total of 2 hours and stand for a total of 2 hours. *Id.* at 1502. She indicated Plaintiff was "capable of moderate stress work (normal work),"

but would need to take 15-minute unscheduled breaks every 2 hours in the workplace, elevate

her legs 25% of the time in an 8-hour day, likely be off task 25% of the time in an 8-hour day,

and miss work more than 4 days per month. *Id.*

As to Dr. Kuhn's opinion, the ALJ summarized the MSS and came to the following

conclusions:

> Her opinions were not persuasive. The medical evidence does not support a
> complete inability to twist, stoop, crouch, crawl, or climb. Her physical
> examinations showed some tenderness and crepitus of the knees, as well as a
> reduced range of motion of the lumbar spine, but the evidence generally showed a
> normal range of motion of the extremities. A consultative examination indicated
> she could walk on her heels and toes, hop on each foot, and squat halfway. There
> was no evidence to support a need to elevate her legs due to knee pain. The
> orthopedic examinations did not advise her to elevate her legs, nor did any other
> treatment provider within the records. There is no evidence to support a need to
> miss work four days a month. The examination wherein she requested her
> disability paperwork noted only a slow gait and obesity, but no other deficits were
> noted. Further, Dr. Kuhn's treatment records do not show that she treated the
> claimant for knee impairments or psychiatric issues; the treatment records from
> her orthopedist and psychiatrist did not support the extreme findings asserted by
> Dr. Kuhn.

ECF No. 29 (citing Tr. 3670 (minimal knee pain with no symptoms of instability), Tr. 3676

(plaintiff reported increased pain, but her orthopedist indicated she was inconsistent with her

physical therapy and advised her to be more diligent), Tr. 3936 (observed plaintiff to exhibit

normal range of motion), Tr. 4524 (same), 4542 (same), 4619 (same), Tr. 4501 (observed

plaintiff to be able to get on and off of exam table with no issues, rise from chair without

difficulty, walk on her heels, tandem walk unsteadily, hop on each foot, and squat halfway)). *See*

*also* Tr. 3724 (5/5 strength and normal range of motion), Tr. 3725 (declining physical therapy),

Tr. 3913-14 (normal range of motion, coordination, reflexes, gait, strength, and sensory

function), Tr. 4548 (normal range of motion and reflexes), Tr. 4620 (declining again physical

therapy despite physician's recommendation).

Although the ALJ did not use the word "inconsistent" when evaluating Dr. Kuhn's medical opinion, failure to do so is not grounds for automatic reversal. *See Atwood v. Kijakazi*, 2022 WL 407119, at *5 (E.D. Mo. Feb. 10, 2022) ("That the ALJ did not use the word 'consistency' is not determinative; word choice alone does not warrant reversal."). The ALJ cited to objective medical records that were inconsistent with Dr. Kuhn's limitations. For example, the ALJ pointed to physical examinations of Plaintiff which revealed normal range of motion, and cited to a January 2021 consultative examination by Dr. Veronica Weston where Plaintiff was observed to be able to squat halfway, hop on each foot, and get off and on the exam table without assistance. The ALJ also referenced records where she was noted to have increased knee pain, but also admitted to not following her physical therapy plan. Thus, the ALJ adequately addressed the consistency factor. *See McClellan v. Kijakazi*, 2021 WL 4198390, at *3 (W.D. Mo. Sept. 15, 2021) ("By stating that Plaintiff's physical examinations 'do not show the level of dysfunction [Plaintiff] suggested,' the ALJ sufficiently considered and articulated the consistency of [Plaintiff's] medical opinion with other evidence in the record.").

Moreover, other evidence mentioned throughout the ALJ's decision reflects inconsistencies with Dr. Kuhn's opinion that Plaintiff could only lift up to 20 pounds and was limited in reaching, handling fingering and feeling. The ALJ noted, for example, that Plaintiff worked part-time at some points throughout the period of disability, did not use an ambulation device, was able to drive and go out alone, care for her elderly parents, care for her dogs and horses, cook, and maintain her own personal needs. Tr. 18, 21-22, 36. The ALJ also considered the fact that the record contained "little information regarding fibromyalgia flares" and their frequency, but did document general non-compliance with recommended physical therapy exercises and failure to do home exercise programs. Tr. 23. *See, e.g.*, Tr. 3631-32, 3669, 3719,

3725, 3760, 3778, 3860. Dr. Kuhn's own treatment notes indicated Plaintiff's Lyrica medication "really helped" when her fibromyalgia "was acting up recently," and indicated she could increase the dosage during inclement weather. Tr. 4522, 4539. Notably, Dr. Kuhn opined that Plaintiff could never reach, handle, finger, or feel, but Plaintiff wrote on her own Function Report that she had no issues using her hands or reaching. Tr. 883. In sum, the Court finds that the ALJ did not fail to consider the consistency factor.

Additionally, the Court finds the ALJ did not err in determining Dr. Kuhn's MSS to be unpersuasive. Plaintiff attempts to find error in the ALJ's evaluation of Dr. Kuhn's opinion by citing to specific records which support the limitations in the MSS. The Commissioner counters Plaintiff's arguments by pointing to other records which do not support such limitations. The ALJ did not commit reversible error simply because she weighed Dr. Kuhn's MSS differently than Plaintiff. *See Lawrence v. Saul*, 970 F.3d 989, 996 (8th Cir. 2020) (upholding the ALJ's decision when the ALJ acknowledged the medical evidence noted by the plaintiff but placed different and permissible weight on the evidence). One of the roles of the ALJ is to weigh and resolve conflicts in the medical evidence presented. *See Tindell v. Barnhart*, 444 F.3d 1002, 1006 (8th Cir. 2006).

Plaintiff takes specific issue with the ALJ's statement that "[t]here was no evidence to support a need to elevate her legs due to knee pain. The orthopedic examinations did not advise her to elevate her legs, nor did any other treatment provider within the records." Plaintiff points to one record, dated January 10, 2020, in which Nurse Practitioner Stephanie Nellesen directed Plaintiff to keep her left ankle wrapped in an ACE bandage and elevate her legs. *See* Tr. 4731. While Plaintiff is correct in pointing out this treatment record, it does not invalidate the ALJ's decision. First, this record was prior to Plaintiff's alleged onset date of February 4, 2020. Second,

the direction for elevation was made because Plaintiff reported that she was letting her dog

outside "and fell down the last step," not as a result of one of the relevant severe impairments.

Tr. 4729.

      The ALJ assessed Dr. Kuhn's medical source statement in light of the records as a whole.

The underlying record is approximately 5,440 pages, and the ALJ's determination is 19 pages in

length. In the Court's careful review of the determination, the ALJ exhaustively summarized the

majority of the records within the relevant time period. In weighing the medical evidence, as

discussed above, the ALJ pointed to specific inconsistencies, including Plaintiff's activities of

daily living which appeared to show limited restraints. "The paragraph concerning the ALJ's

evaluation of [a medical] opinion cannot be read in isolation but must be read as part of the

overall discussion of plaintiff's RFC assessment." *Trosper v. Saul*, 2021 WL 1857124, at *5

(E.D. Mo. May 10, 2021). When read in context, as part of the overall discussion of Plaintiff's

RFC, the Court finds the ALJ appropriately considered and supported the determination with

substantial medical and nonmedical evidence. The ALJ's thorough review of the record supports

her evaluation of Dr. Kuhn's opinion.

      **C. The ALJ's Evaluation of the Limitations Opined by Drs. Akeson and Watson**

      Lastly, Plaintiff argues the RFC is improper because the ALJ found the opinions of Dr.

Steven Akeson, Psy.D., and Dr. Charles Watson, Psy.D., to be persuasive, but failed to include

two of their opined limitations in the RFC. ECF No. 12 at 10. Drs. Akeson and Watson are non-

examining consultative examiners who submitted their opinions on September 25, 2020 and

December 2, 2020, respectively. Tr. 624-36, 642-58. Both doctors opined that Plaintiff would be

"able to respond appropriately to minimal change within the work environment" and "to set

goals and make plans with assistance." Tr. 636, 657.

In evaluating the non-examining consultative opinions of Drs. Akeson and Watson, the

ALJ wrote:

> Steven Akeson Psy.D. offered opinions in a prior administrative medical
> determination. He found moderate limitations in interacting with others and
> adapting and managing herself. He otherwise found mild limitations. He found no
> evidence of the C criteria. Dr. Akeson felt she could work in a low social
> environment away from the general public. He also felt she could respond
> appropriately to minimal changes within the work environment, set goals, and
> make plans with assistance. Charles Watson Psy.D. offered opinions in a
> reconsideration determination. These opinions are persuasive. The medical
> evidence supports moderate limitations in interacting with others due to irritability
> and social anxiety. The evidence is also consistent with moderate limitations in
> adapting and managing herself due to depression and anxiety with some low and
> anxious moods. While the evidence does not support more than mild limitations
> in understanding, remembering, or applying information and maintaining
> concentration, persistence, and pace, the residual functional capacity further
> reduced the claimant to simple tasks in order to reduce stress for the claimant.

Tr. 28-29.

Plaintiff cites to *Masden v. Saul*, 2021 WL 3172934 (W.D. Mo. July 27, 2021) for

support. In *Masden*, the court found that an RFC limiting the plaintiff to "few, if any

workplace changes" did not adequately incorporate a medical opinion limitation that any

changes in the workplace be "predictable and gradual." However, declining to find

*Masden* persuasive, this Court more recently explained that a difference in the RFC's

wording and a medical opinion's wording is not automatic error. *Deck v. Kijakazi*, 2022

WL 13688874 at *4 (E.D. Mo. Oct. 21, 2022). Instead, *Deck* explained that the question

for the Court is whether the RFC's limitations are equivalent to the persuasive medical

opinion's limitations or, in other words, whether there is any "meaningful difference

between the two." *Id.*

In this case, the ALJ limited Plaintiff to "simple, routine tasks" with "simple

routine work-related decisions" and "only gradual changes in job settings and duties." Tr.

18

21. A gradual change while performing simple, routine tasks does not appear to be practically different from a minimal change while performing simple, routine tasks. Plaintiff has not cited to, and the Court cannot independently find, any case law to support that these specific phrases would be error to use interchangeably and would require remand.

Notwithstanding the above, even if the Court were to find that "gradual" and "minimal" were not equivalent phrases, an ALJ is not required to adopt or include all limitations assessed by a medical source, even if the source is found to be persuasive. *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011) (in making an RFC determination, "we do not require an ALJ to mechanically list and reject every possible limitation"); *see also Cannady v. Colvin*, 2015 WL 139762, at *5 (W.D. Mo. Jan. 12, 2015) (ALJ not required to adopt all limitations proposed by a medical source, even if the ALJ affords significant weight to the source's opinion); *McGee v. Colvin*, 2015 WL 58484, at *4–5 (W.D. Mo. Jan. 5, 2015) ("[a]n ALJ is not required to refute every alleged limitation.").

In the present action, the ALJ thoroughly summarized Plaintiff's numerous mental health records and explained the specific RFC limitations related to her mental impairments:

> Her mood disorder and anxiety disorder were also considered in determining the mental limitations in the residual functional capacity. The claimant was limited to simple, routine work with simple work-related decisions with only gradual changes in job setting and duties in order to reduce stress due to depression and anxiety with some reported difficulties in feeling overwhelmed at times with stressors. Her social anxiety and irritability were also considered in determining the social limitations in limiting contact with coworkers, supervisors, and the general public. Her treatment records showed stable conditions controlled by medications, with few exacerbations of symptoms. She had overwhelmingly benign mental status examinations with no hospitalizations or increased frequency

or intensity of treatment. Her mental health limitations were fully considered in determining the limitations in the residual functional capacity.

Tr. 30. The ALJ credited the consulting examiners opinions and incorporated their overall conclusions about the Plaintiff's mental limitations into the RFC. Under the regulations, the ALJ is responsible for determining a claimant's RFC, not a medical source. *See* 20 C.F.R.§ 404.154(c). Nothing in the ALJ's determination suggests she disregarded evidence or ignored their limitations. *See Koss v. Kijakazi*, 2022 WL 715009, at *10 (E.D. Mo. Mar. 10, 2022) (finding a broader limitation than the medical opinion's specific limitation to be sufficient because an ALJ is not required to incorporate every specific limitation a medical expert identifies). To the contrary, the ALJ significantly limited the frequency of changes Plaintiff could encounter in the workplace and reduced her work capacities to simple and routine.

Further, the ALJ explained elsewhere in the determination that although the opinions of Drs. Akeson and Watson were persuasive, the "evidence [did] not support an inability to fulfill goals." *Id*. The ALJ explained that "while she reported amotivation, the claimant was able to work part-time, care for her elderly parents, care for her dogs and horses, and perform activities of daily living including personal care and cooking." *Id.* As discussed above, it is not error for an ALJ to reject a specific limitation from a persuasive medical source. Therefore, the Court does not find that the ALJ failed to explain or support the exclusion of this limitation in the RFC.

**V. Conclusion**

Based on a careful review of the parties' briefings and the underlying record in this action, the Court finds the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence in the record as a whole and is not conclusory. Where substantial evidence supports the

Commissioner's decision, the decision may not be reversed merely because substantial evidence may also support a different outcome. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (citing *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992)).

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Jena Beyes' Complaint is **DISMISSED, with prejudice**. A separate judgment will accompany this Memorandum and Order.

So Ordered this 3rd day of February, 2023.

STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE